UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

SIMKAR LLC,

                             Debtor.

Chapter 11
Case No. 19-22576 (RDD)

------------------------------------------------------------X

**INTERIM ORDER AUTHORIZING USE OF CASH
COLLATERAL BY DEBTOR PURSUANT TO 11 U.S.C. SECTION 363(c);
AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES; AND DIRECTING
PNC BANK TO PROVIDE THE DEBTOR WITH ACCESS TO ACCOUNTS**

**UPON** the motion, dated March 13, 2019 (the "Motion") of SIMKAR LLC, the above-captioned debtor and debtor- in- possession (the "Debtor") which seeks an order (a) granting authority for the Debtor's ~~to, inter alia,~~ use of cash ~~cash collateral~~ in which CAPSTONE CREDIT, LLC and CAPSTONE CAPITAL GROUP, LLC (collectively, the "~~Secured Creditor~~Capstone") has asserted ~~a~~ an ownership interest and/or a fully perfected first priority security interest, pursuant to 11 U.S.C. §§ ~~Sections~~ 363(c)(2) and 361 and Federal Rules of Bankruptcy Procedure 4001, (b) the immediate release of the Debtor's frozen accounts at PNC Bank, and the payment of prepetition wages to the Debtor's employees; and there being due and sufficient notice of the Motion's request for interim relief on PNC Bank and Capstone; and there being no objections to the interim relief granted hereby; and the Debtor having provided a letter from PNC Bank's counsel acknowledging the foregoing; and upon the record of the interim hearing held by the Court on ~~an interim hearing having been held on~~ March 15, 2019 (the "Interim Hearing") on the Debtor's request for interim relief under the Motion; and, after due deliberation and for the reasons stated by the Court at the Interim Hearing, the Court having granted the relief set forth herein; and, notwithstanding the foregoing, it appearing that PNC Bank has continued the freeze on the Debtor's account and

demanded the provision of this Order to release such freeze, for which PNC Bank will be responsible if its actions in derogation of the Court's ruling at the Interim Hearing causes damages to the Debtor; now, therefore, it is hereby found and determined as follows:, and upon the record taken at the Interim Hearing, and all of the pleadings heretofore filed in this proceeding, it is hereby found and determined as follows:

1. This Court has jurisdiction over these proceedingsthe Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and this is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. Notice of the interim relief sought and granted herein was adequate and appropriate in the current circumstances of this Chapter 11 case as contemplated by 11 U.S.C. § 102(1)(A) and Fed. R. Bankr. P. 4001(b)(2), as to PNC Bank and Capstone.

2. The interim relief granted hereby is necessary to avoid immediate and irreparable harm to the Debtor and the Debtor's estate.

32. On or about March 6, 2019, (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"), and it has continued in possession of its property and the management of its business pursuant to 11 U.S.C. §§ 1107 and 1108.

43. As of the date hereof, the United States Trustee has not appointed an Official Creditors' Committee as provided for in Section 11 U.S.C. § 1102 of the Code. No trustee or examiner has been heretofore appointed in this proceedingcase.

54. The Debtor is in the business of primarily of in the manufacturing of a variety of modern lighting products including linear and compact fluorescent, exit and emergency, HID, induction, LED, and vandal resistant lighting fixtures for commercial, industrial and residential

2

use.

6~~5~~.  The Debtor's account<u>s numbered xxxxxx5592, xxxxxx8684 and xxxxxx5576</u> (the "<u>"</u>PNC Account<u>s</u>") at PNC Bank ~~("PNC")~~ ~~has~~ <u>have</u> been closed, frozen and/or blocked by PNC BANK <u>since at least the commencement of this chapter 11 case such that</u> ~~and~~ the Debtor cannot gain access to the funds therein (the "PNC Funds").

7~~6~~.  Subject to the Debtor's investigation and confirmation, on a preliminary basis, the Debtor acknowledges, on behalf of itself ~~and~~ <u>but</u> not its estate:

    i. That on or about May 17, 2018, the Debtor entered into, inter alia, a Master Purchase & Sale Agreement with Secured Creditor (the "Factoring Agreement") pursuant to which, among other things, the Debtor: (a) sold and transferred all accounts (the "<u>Factored</u> Accounts") ~~to Secured Creditor as absolute owner thereof,~~<u>to Captsone</u> and (b) undertook certain obligations to ~~Secured Creditor~~<u>Captstone</u>, and (c) granted a first priority lien and security interest to ~~Secured Creditor~~<u>Capstone</u> on all of its assets to secure the representations and covenants made by Debtor, but not the credit risk of the Accounts;

    ii. A UCC-1 filing was recorded in the ~~State~~ <u>Commonwealth</u> of Pennsylvania<u>;</u>~~.~~

    iii. That the PNC Account<u>s</u> <u>are</u>~~is~~ subject to a Deposit Account Control Agreement between PNC<u> Bank</u>, the Debtor and ~~the Secured Creditor~~<u>Capstone</u>;

    iv. As of the the Petition Date, ~~Secured Creditor's~~<u>Capstone's</u> claim was ~~one~~ for not less than $5.7 million (together with any and all other claims or obligations arising under the Factoring Agreement and related agreements,

3

and interest accrued through the Petition Date, the "~~Secured~~ Claim~~s~~").

v. Subject to finding "<ins>8</ins>~~7~~," below, the use of the Debtor's personal property<ins>, including case,</ins> which potentially constitutes <ins>Capstone's</ins> collateral ~~of Secured Creditor~~ (the "Cash Collateral" or "Collateral") is essential to the continued preservation and maximization of the Debtor's estate.

vi. Continued use of the Cash Collateral on an interim basis pending a final hearing is necessary to prevent immediate and irreparable harm to the Debtor's estate in that without authorization to use the Cash Collateral, the Debtor's ability to meet its current necessary and integral business obligations will be impossible.

vii. The value of Debtor's estate will be maximized by the continuation of Debtor, as a going business, and the use of the Cash Collateral is essential to such operations.

viii. Good cause has been shown for entry of this <ins>Interim</ins> ~~Cash Collateral~~ Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). In particular, the authorization granted under the terms of this ~~Cash Collateral~~<ins>Interim</ins> Order for the Debtor<ins>'s</ins> ~~to continue using~~<ins>continued use of</ins> Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Entry of this ~~Cash Collateral~~<ins>Interim</ins> Order is in the best interest of the Debtor, its estate and creditors.

ix. The Debtor, for purposes of this Interim Order only and subject to paragraph 1<ins>7</ins>~~6~~ hereof, <ins>and not for its estate,</ins> represents, warrants and covenants that:

x. The ~~Secured Obligations~~<ins>Claim</ins> constitute~~s~~ the legal, valid, and binding

4

obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code). No portion of the ~~Secured Obligations~~Claim or any payment made to ~~Secured Creditor~~Capstone or applied to the obligations owing ~~under the Secured Obligations~~to Capstone prior to the Petition Date is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense **[NO. THIS IS OVERREACHING EVEN WITH THE INTRODCUCTORY CLASS TO THIS PARAGRAPH RDD]**, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law.

xi. **THIS SUBPARAGRAPH IS OVERREACHIGN EVEN WITH THE QUALIFYING CLAUSE THAT INTRODUCES THIS PARAGRAPH AND SHOULD BE IGNORED. RDD** Subject to its review and entry of the Final Order, the Debtor and its estate hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind against Secured Creditor. Subject to entry of the Final Order, the Debtor hereby forever waives and releases any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against the Secured Creditor, or its officers, directors, equity holders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultant, agents, and other representatives (including

5

    its officers, directors, equity holders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultant, agents, and other representatives) acting in such capacity, whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law;

 xii. **SAME.  NO EVIDENCE WAS PRESENTED TO THE COURT ON ANY DOCUMENTATION OF THE LIENS REFERRED TO HEREIN.  RDD.**  The prepetition liens granted to the Secured Creditor in the Collateral (i) are valid, binding, perfected, and enforceable liens and security interests in the collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, and (iii) constitute the legal, valid, and binding obligation of the Debtor, enforceable in accordance with the terms of the applicable Secured Creditor Documents.

  8~~7~~.  The Debtor has ~~informally co~~contended that the PNC Funds are property of the Debtor's estate. ~~The Secured Creditor~~Capstone disputes that contention. However, solely for the purposes of this Cash Collateral Order, ~~the Secured Creditor~~Capstone does not object to the Debtor's use of the PNC Funds to pay is employees and related costs as provided herein.

  **BASED UPON THE FOREGOING,** it is hereby ORDERED as follows:

1. PNC Bank is ~~authorized and~~ directed to release ~~the~~ its hold immediately on the PNC Accounts and the PNC Funds. The PNC Funds shall stay on deposit with PNC. ~~The Secured Creditor~~Capstone permits the Debtor to use the PNC Funds to pay ~~the~~ "Payroll" ~~line item~~ for week~~s~~ 1 ~~and 2 in the Budget (defined below)~~to a maximum of $169,310, and without limiting the first sentence of this paragraph, PNC Bank is directed to release such funds immediately to pay such "Payroll." For the avoidance of doubt, nothing herein shall require ~~the Secured Creditor~~Capstone to provide any financing or other financial accommodation to the Debtor other than the use of the PNC Funds in the PNC Accounts for the "Payroll" line item.

2. The PNC Funds shall constitute "cash collateral" solely for the purposes of ~~this stipulation on an interim basis~~Interim Order;~~,~~ provided, however, that notwithstanding anything to the contrary herein, nothing in this ~~Cash Collateral~~Interim Order shall constitute a finding of fact or conclusion of law or waiver that the PNC Funds are property of the Debtor's estate or that the PNC Funds are "cash collateral," with any such determination to be made pursuant to further order of the Court on due notice ~~and~~ in accordance with the Federal Rules of Bankruptcy Procedure. ~~The Secured Creditor~~Capstone and the Debtor expressly reserve~~s~~ all of ~~its~~ their respective rights on the foregoing issues and, without limiting the foregoing, Capstone ~~this~~ does not waive ~~of~~ its position that the PNC Funds consist of receivables sold ~~to Secured Creditor~~Capstone by absolute sale and are the property of ~~the Secured Creditor~~Capstone.

3. The provisions of this ~~Cash Collateral~~Interim Order shall be binding upon and inure to the benefit of ~~the Secured Creditor~~Capstone and the Debtor, and ~~its~~ their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of the Debtor's estate or with respect to its property, including any trustee that may be appointed in the Chapter 11 Case or appointed if the Chapter 11 Case is converted to a case under

chapter 7 of the Bankruptcy Code).

4. In addition to the existing rights and interests of ~~the Secured Creditor~~Capstone in the Collateral and for the purpose of adequately protecting it from Collateral Diminution,[1] and in the amount thereof, ~~the Secured Creditor~~Capstone is hereby granted: (a) valid, enforceable, unavoidable, and fully perfected replacement liens ("Replacement Liens") upon all existing and after-acquired tangible and intangible personal and real property and assets of the Debtor of any kind or nature, whether existing prior to or acquired after the Petition Date and wherever located, and all products and proceeds of all of the foregoing (collectively, the "Replacement Collateral"), only to the extent that said prepetition liens were or deemed valid, perfected and enforceable as of the Petition Date, in the continuing order of priority of its pre-petition liens without determination herein as to the nature, extent and validity of said pre-petition liens and claims and to the extent Collateral Diminution occurs during the Chapter 11 case, and (b) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim") to the extent of such Collateral Diminution that is not satisfied by the Replacement Lien, subject only to: (i) United States Trustee fees pursuant to 28 U.S.C. § ~~Section~~ 1930, together with interest, if any, pursuant to 31 U.S.C. § ~~Section~~ 3717 and any Clerk's filing fees; (ii) fees and expenses incurred in connection with any investigation of the nature, extent and validity of ~~the Secured Creditor's~~Capstone liens and security interests by a Committee, if one is ~~appointed, in~~appointed, or the Debtor in an amount not to exceed fifteen thousand dollars ($15,000)

---

[1] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of ~~the Secured Creditor~~Capstone's interest in Debtor's property as of the ~~Filing~~ Petition Date, to the extent valid and enforceable, by reason of Debtor's use of Cash Collateral in accordance with this Order and the granting of the Carve-outs hereunder~~;~~, provided, however, that if the PNC Funds are determined not to be property of the Debtor's estate, the Replacement Liens on the Replacement Collateral and Superpriority Claims shall be in an amount equal to the amount of the PNC Funds used by the Debtor pursuant to this ~~Cash Collateral~~Interim Order.

8

such cap to be increased if Capstone does not reasonably cooperate with respect to such investigation; (iii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed five thousand dollars ($5,000) and (iv) Avoidance Actions (defined below) and the proceeds thereof (collectively, the "Carve Out").

5.  ~~The Secured creditor~~Capstone shall be paid $27,000.00 per month as adequate protection, to be applied only to its allowed secured claim in this case.

6.  To the extent required, the automatic stay as imposed by ~~Section~~ 11 U.S.C. § 362(a) ~~of the Bankruptcy Code~~ is hereby modified to permit the foregoing.

7.  All of the Debtor's expenditures shall be specifically accounted for in detailed monthly reports which the Debtor shall file with the Bankruptcy Court.  In addition, Debtor shall use its commercially reasonable efforts to provide to ~~Secured Creditor~~Capstone and the Committee if one is appointed: (i) detailed weekly reports each Monday for preceding calendar week including all expenditures made by Debtor, all receivables created by Debtor, and all obligations incurred by Debtor,  (ii) at least on a weekly basis on each Monday, and at such other times as ~~Secured Creditor~~Capstone may request, detailed agings of all accounts receivable, including, without limitation, the Factored Accounts along with all requested backup relating to the accounts, (iii) all information and reports required under the Factoring Agreement, and (iv) all other documents and information ~~Secured Creditor~~Capstone from time to time reasonably requests.  Debtor shall, from time to time, ~~immediately~~ promptly upon ~~Secured Creditor~~Capstone's request: (i) take all reasonable actions necessary to assist ~~the Secured Creditor~~Capstone in collecting the Factored Accounts, and (ii) provide to ~~Secured Creditor~~Capstone all documents and information necessary to collect the Factored Accounts, in each case to the extent provided in the parties' agreements. ~~Secured Creditor~~Capstone may from time to time contact the account payors with respect to the

9

Factored Accounts and Shared Accounts to the extent reasonably necessary to facilitate confirmation of such accounts and collection thereof, to the extent provided for the in the parties' agreements.

8. The security interests and liens herein granted and regranted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Secured CreditorCapstone on the Petition Date; (ii) shall secure the payment of indebtedness to the Secured CreditorCapstone in an amount equal to the aggregate Cash Collateral used or consumed by the Debtor and any diminution in the value of the Collateral; and (iii) shall be deemed to be automatically perfected without the necessity of any further action by the Secured CreditorCapstone or the Debtor. Without limitation, therefore, the Secured CreditorCapstone shall not be required to file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the liens and security interests granted by this Interim Order.

9. The Replacement Liens shall not be subject to challenge, dispute or subordination and shall immediately upon entry of this Cash Collateral Order attach and become valid, fully perfected, enforceable, unavoidable and effective by operation of law as of the Petition Date without any further action by the Debtor, the Secured CreditorCapstone, and the Court, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, leasehold mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of any other actions. If the Secured CreditorCapstone hereafter requests that the Debtor execute and deliver financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by any of them to be reasonably necessary or desirable to further evidence the perfection of the Replacement Liens, the Debtor is authorized and directed to execute and

10

deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents at the expense of ~~such Cash Collateral Creditor~~Capstone.

10. ~~The Secured Creditor~~Capstone reserves all rights including (i) the right to challenge the Debtor's contention that all receivables, including the funds in the PNC Account<ins>s</ins> constitute "cash collateral"; (ii) its right to hereafter request additional adequate protection and to object to the adequacy of the adequate protection granted herein.

11. Notwithstanding anything to the contrary in this Order, the Debtor's authority to use the Cash Collateral pursuant to this <ins>Interim</ins> Order shall terminate immediately and automatically, (a) within 30 days after the date hereof; (b) upon the fifth (5th) business day following the delivery of written notice to the Debtor, its bankruptcy counsel, counsel to any official <ins>C</ins>~~c~~ommittee of unsecured <ins>C</ins>~~c~~reditor<ins>s</ins>, or, if no committee has been appointed, ~~then~~ to the Debtor's 20 largest unsecured <ins>c</ins>~~C~~reditors, and counsel to the United States Trustee, by ~~the Secured Creditor~~Capstone of any breach or default by the Debtor of the terms and provision of this Order, unless the Debtor shall have cured such breach or default within such ten (10) business day period, or (c) without notice of any kind upon the entry of an order of the Court providing for the dismissal or conversion of the Chapter 11 case to a Chapter 7 case or appointment of a trustee without the written consent of ~~the Secured Credito~~Capstone~~r~~.

12. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of ~~the Secured Creditor~~Capstone and the Debtor. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or ~~vacation~~ vacatur shall not affect the validity and enforceability of any lien, priority or benefit with respect to any indebtedness of the Debtor to the Secured Creditor.

11

13. **THIS PARAGRAPH IS OF NO FORCE OR EFFECT.  NO EVIDENCE OF CAPSTONE'S LIENS HAS BEEN PROVIDED TO THE COURT.**  The provisions of this Order regarding the nature and extent of Secured Creditor's interest in the Collateral are binding upon the Debtor and all parties in interest (including but not limited to any statutory committee subsequently appointed in the chapter 11 case), and any application of Collateral under this Order shall be indefeasible, unless (a) an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Collateral, the prepetition obligations to the Secured Creditor (the "Prepetition Obligations"), the Replacement Liens, or the liens securing the Prepetition Obligations (the "Prepetition Liens") is properly commenced no later than sixty (60) days from the entry of a final order by a Committee if one is appointed or 75 days by any creditor if no Committee is appointed, plus such additional time as the Court, for cause shown, authorizes, and (b) a final order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such date, the Collateral and the Prepetition Obligations shall constitute allowed claims for all purposes in the Chapter 11 case and any subsequent Chapter 7 case, the Replacement Liens and the Prepetition Liens shall be deemed legal, valid, binding, perfected, and the Collateral, the Prepetition Obligations, the Replacement Liens, and the Prepetition Liens shall not be subject to  avoidance or any other similar challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, and successor(s) thereto.   If any such proceeding or contested matter is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and priority of the Collateral, the Prepetition Obligations, the Replacement Liens and the Prepetition Liens, but only with respect to and to the extent of the objections raised in such adversary proceeding or contested matter, and all

other matters and objections not raised in such adversary proceeding or contested matter shall be deemed forever waived.

14.  This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Code.

15.  The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

16.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any Adequate Protection Lien, the Superpriority Claim, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Lien, incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the ~~Secured Creditor~~Capstone shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral or such Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor.

17.  Except as otherwise expressly set forth herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) ~~the Secured Party's~~Capstone's rights to seek any other or supplemental relief in respect of the Debtor including the right to seek additional adequate protection at the Final Hearing; (b) any of the rights of the Secured Party under the Bankruptcy Code or under non-bankruptcy law,

including, without limitation, the right of the Secured Party to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the case, conversion of the case to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in the case, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of ~~the Secured Party~~Capstone.

18. The failure or delay of ~~the Secured Party~~Capstone to seek relief or otherwise exercise any of its rights and remedies under this Interim Order, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by any or all of the Secured Party.

19. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to ~~the Secured Party~~Capstone hereunder is insufficient to compensate for any Collateral Diminution during the case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by ~~the Secured Party~~Capstone, that the adequate protection granted herein does in fact adequately protect ~~the Secured Party~~Capstone against any diminution in value of its respective interests in the Collateral.

20. Pursuant to sections 105, 361, and 363 of the Bankruptcy Code, ~~the Secured Creditor~~Capstone is hereby to have acted in "good faith" in connection with the negotiation and entry of this Order **INCLUDING THE CHANGES STATED IN BOLD**, and ~~the Secured Creditor~~Capstone is entitled to the protection provided to such entities under section 363(m) of the Bankruptcy Code.

21. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

14

This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

22. The Court has and will retain jurisdiction to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

23. A further interim hearing on the Motion is scheduled for ~~_____~~ March 22, 2019 at [~~10:00~~] [~~a.m.~~] (prevailing Eastern time) before this Court. Within ~~three (3)~~one business day~~s~~ after entry of this Interim Order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not previously served on a party) and this Interim Order on (i) the parties requesting notice, and (ii) counsel to any Creditors' Committee and all parties known to the Debtor to assert an interest in the Debtor's cash or other assets.

Dated:  White Plains, New York
        March 15~~__~~, 2019

                          /s/ Robert D. Drain
        _____
                          HONORABLE ROBERT D. DRAIN
                          UNITED STATES BANKRUPTCY JUDGE

15

**BUDGET**

16

**FACTORED ACCOUNTS**

Formatted: Left

17