REED SMITH LLP
Christopher A. Lynch
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email:clynch@reedsmith.com

and

Claudia Springer (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
Email: cspringer@reedsmith.com

*Counsel for Sandeep Gupta,*
*Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMKAR LLC, *et al.*, | Case No.: 19-22576 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**CHAPTER 11 TRUSTEE'S MOTION SEEKING ENTRY OF AN ORDER AUTHORIZING THE SALE OF PERSONAL PROPERTY AT A PUBLIC AUCTION FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

**TO:  THE HONORABLE ROBERT D. DRAIN,**
**       UNITED STATES BANKRUPTCY JUDGE:**

Sandeep Gupta, not individually but in his capacity as chapter 11 trustee (the "Trustee") of Simkar LLC ("Simkar" or the "Debtor") in the above-captioned chapter 11 case, by and through his counsel, Reed Smith LLP, files this motion (the "Motion") pursuant to sections 105(a), 363(b),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: Simkar LLC (5119) and Neo Lights Holdings, Inc. (7155). The address of the Debtors' corporate headquarters is 700 Ramona Avenue, Philadelphia, Pennsylvania."

and (f) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, (the "Bankruptcy Code"), Rules 2002(a)(2) and (c), 6004(a), (b), (c), (e), and (f), and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and Administrative Guideline Order GM-383 for the United States Bankruptcy Court for the Southern District of New York, for entry an order (the "Sale Order") authorizing and approving the sale of certain of the Debtor's personal property at a public auction to the highest bidder(s) (the "Successful Bidder(s)"), and respectfully represents as follows.

## PRELIMINARY STATEMENT

By this Motion, the Trustee seeks authority to sell at auction the Debtor's machinery, equipment and inventory by the Trustee's retained and Court-approved auctioneer, PPL Group, LLC and Hyperams, LLC (collectively, "Auctioneer"). The Auctioneer intends to conduct an auction on October 22 and 23, 2019 at 9:00 a.m. prevailing Eastern time, which will be conducted both online and in-person at 700 Ramona Avenue, Philadelphia PA 19120 (the "Facility") on October 22, 2019 and online only on October 23, 2019. The Trustee and the Auctioneer believe that holding the auction promptly will maximize the value received for the Assets (as defined below). Since its retention, the Auctioneer has engaged in a thorough marketing campaign, such that sufficient notice has been provided to potential bidders and interested parties.

Pursuant to the terms of the Guarantee Auction Agreement, dated August 15, 2019, between the Trustee and the Auctioneer (the "Auctioneer Agreement") approved by the Court, the Auction is a guarantee auction, such that the Auctioneer will pay the guarantee price of $600,000 in advance of the auction on account of the Assets. After the payment of expenses incurred by the Auctioneer (which payment is subject to Court approval) and certain other expenses, all sale

proceeds generated at the auction in excess of the $600,000 guarantee price will be paid to the Debtor's estate.

Accordingly, and as set forth further below, the Trustee seeks entry of the Sale Order.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief sought herein are Bankruptcy Code sections 105(a), 363(b), and (f), Bankruptcy Rules 2002(a)(2) and (c), 6004(a), (b), (c), (e), and (f) and 9007, and Local Rule 6004-1.

## BACKGROUND

4. On March 6, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Case").[2]

5. On March 22, 2019, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102 [Dkt. No. 22].

6. On April 26, 2019, the Court entered an order granting the Committee's motion seeking the appointment of a chapter 11 trustee. Thereafter, on May 1, 2019, the U.S. Trustee sought approval of Sandeep Gupta as the Chapter 11 Trustee [Dkt. No. 66]. On that same day, the Court entered an order approving the appointment of Mr. Gupta as the Chapter 11 Trustee [Dkt. No. 67].

---

[2] The Chapter 11 Case is being jointly administered for administrative purposes only with that of the Debtor's parent, Neo Lights Holdings, Inc.

7. In furtherance of the Trustee's efforts to liquidate the assets of the Debtor's estate and wind down this chapter 11 proceeding, the Trustee is seeking authority to sell certain personal property, specifically: certain machinery and equipment assets located at the Facility (as more specifically described in **Exhibit B** hereto, the "Personal Property") and certain inventory located at the Facility and at various other warehouse locations (including as more specifically described in **Exhibit C** hereto, the "Inventory" and together with the Personal Property, the "Assets").

8. The Assets do not include (a) any cash held by the Trustee or the estate, (b) causes of action, including avoidance and recovery actions under the Bankruptcy Code, and (c) any intangible property related to the Assets, including the name "Simkar".

9. By order dated September 10, 2019, the Trustee received approval to retain the Auctioneer to, *inter alia*, market the Assets and conduct an auction sale.

10. Auctioneer is conducting an accelerated marketing campaign appropriate to the nature of the Assets and contemplates holding an online and in-person auction at the Facility on October 22, 2019 and online auction on October 23, 2019 (as more fully defined below, the "Auction"). The Auctioneer's marketing efforts have resulted in many inquiries regarding the Assets.

## RELIEF REQUESTED AND BASIS FOR RELIEF

11. By this Motion, the Trustee is seeking entry of an order authorizing the Trustee to sell the Assets at the Auction and approving the sale of the Assets to the Successful Bidder(s) free and clear of all liens, claims and encumbrances. In the event that a Successful Bidder requests a finding of good faith under section 363(m) of the Bankruptcy Code, the Trustee reserves the right to request such a finding by the Court after the Auction but the lack of any such finding shall not alter the finality of the sales occurring at the Auction.

**I.     The Proposed Auction**

12.     The Trustee is seeking to sell the Assets subject to higher and/or better offers at the Auction. In order to ensure that the highest and best offer is received for the Assets, the Trustee proposes to conduct the Auction in accordance with the following procedures (the "Auction Procedures"):

(a)     Subject to legal, regulatory and security requirements, the Auctioneer contemplates conducting the Auction on October 22 and 23, 2019 beginning at 9:00 a.m. each day. The sale on October 22, 2019 will be a live open outcry auction which will take place at the Facility with simultaneous bidding online via a webcast. The sale on October 23, 2019 will be a timed online auction. The date, time and/or location of the Auction may be changed from time-to-time with the approval of the Trustee, the Auctioneer and secured creditors Capstone Credit LLC and Capstone Capital Group LLC (collectively, "Capstone"), which approval shall not be unreasonably withheld, conditioned or delayed.

(b)     The Auctioneer, in consultation with the Trustee, will group the Assets into lots, as appropriate (the "Lots"). It is currently contemplated that larger pieces of equipment comprising the Personal Property will be sold individually, and smaller items of equipment comprising the Personal Property will grouped into Lots. The Inventory may either be grouped into several bulk Lots or sold in a single Lot to a single party.

(c)     The Auctioneer may, in its discretion, set reserve prices for individual Assets or Lots, which reserve prices will vary from Lot to Lot.

(d)     The Auctioneer may, in its discretion, set minimum bidding increments, which will vary both from Lot to Lot and as bidding progresses on any single Lot.

(e)     If the Auctioneer receives a pre-Auction offer for an individual Asset or Lot that exceeds the value that the Auctioneer believes, in its professional experience and discretion, can be achieved at Auction, the Auctioneer, in consultation with the Trustee and Capstone, may accept such pre-Auction offer and remove the item from the Auction.

(f)     All Assets will be sold "as is", "where is", without representation or warranty, either express or implied. Removal costs will be the sole responsibility of the Successful Bidder. Removals of all items purchased at the Auction shall occur on or prior to November 10, 2019, unless special arrangements are made by the Successful Bidder and the Trustee.

(g)     In order to bid at the Auction, the Auctioneer may require prospective bidders to register. On-site bidders may be required to submit a valid form of

identification, a business card, or complete a basic information form. Online bidders must register with Bidspotter.com in advance of the Auction. In addition, the Auctioneer, in its discretion, may require prospective bidders to post a deposit of up to twenty-five percent (25%), provide a bank letter, or have a history of successful bidding and payment with the Auctioneer.

(h) Subject to legal, regulatory, and security requirements, the Trustee shall permit the Auctioneer, its employees, contractors, representatives, agents and invitees (collectively, the "Auctioneer's Representatives"), to have unrestricted and unencumbered access to the Facility during normal business hours from the Effective Date (as defined in the Auctioneer Agreement) through the date that all the Assets are removed from the Facility (the "Occupancy Period"), subject to any restrictions which have been disclosed by the Trustee to the Auctioneer. During the Occupancy Period, the Trustee shall cause there to be adequate utilities and reasonable security at the Facility and shall have caretakers at the Facility during normal business hours on days when the Assets are scheduled for removal to remain as representatives.

(i) Prospective bidders accessing the Facility shall not be allowed to take pictures, although the Auctioneer will take pictures of the Assets as part of the lotting and sales process and will submit all such photos to the Trustee in advance of any auction.

(j) Free, clear and unencumbered title to the Assets shall be conveyed to Successful Bidders at the time of the sale of the Assets and remittance of the full amount of the successful bid in immediately available funds as described below.

(k) Successful bidders must remit payment for the Asset(s) purchased by cashier's check, bank wire or other certified funds. Credit cards are not accepted. Payment in full is required before a Successful Bidder will be permitted to remove their items from the Facility.

(l) The Auctioneer shall collect applicable taxes from Successful Bidders and remit such taxes to the appropriate tax authority.

(m) All gross sale proceeds will be held in accordance with the terms of the Auctioneer Agreement.

13. The Trustee will conduct the Auction, to be run by the Auctioneer, to select the highest or best bid for each of the Assets or Lots.

14. The Trustee believes that the Auction Procedures will attract serious parties interested in acquiring the Assets and will result in realizing the greatest value for the Assets. In

particular, simultaneously conducting an online auction will attract a geographically-wide range of potential bidders.

15. The Auctioneer will conduct the Auction in any manner that it believes, in its business judgment, will achieve the maximum value for the Assets. The Auctioneer will group the assets into Lots, as described in the Auction Procedures, and may establish reserve prices and/or bidding increments, as the Trustee and the Auctioneer deem appropriate in their discretion.

16. Prior to the conclusion of the Auction, the Auctioneer (in consultation with the Trustee, as need be) will (a) review and evaluate all bids, (b) identify the highest or otherwise best offer for the sale of each of the Assets or Lots received at the Auction (each such bid, a "<u>Successful Bid</u>"), and (c) communicate the identity of the Successful Bidder(s) and the details of the Successful Bid(s).

17. In accordance with Local Rule 6004-1(f), within 21 days of the Auction, the Auctioneer shall file a report with the Bankruptcy Court and transmit a copy of the report to the Office of the United States Trustee.

**II.** **This Court Should Approve the Sale of the Assets to the Successful Bidder(s)**

18. The Trustee seeks this Court's approval of the sale of the Assets free and clear of all liens, claims, interests and encumbrances to the Successful Bidder(s).

19. Section 363(b) of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules govern the sale of assets outside the ordinary course of business.

20. Section 363(f) of the Bankruptcy Code states as follows:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21. The conditions set forth in 11 U.S.C. § 363(f) are in the disjunctive, which means that only one of the tests must be met. The Trustee believes that the sale of the Assets in this manner is in the best interests of the Debtor's estate and creditors, for a variety of reasons, including the following: (i) the auction process as structured will hopefully incentivize bidders to come forward and will promote vigorous bidding; (ii) the sale proceeds will be used to fund the estate's administrative expenses incurred in advancing the sale (subject to the Carveout set forth in in the *Order Authorizing Sandeep Gupta in his Capacity as the Chapter 11 Trustee to Use Cash Collateral Pursuant to Sections 105, 361, 363, 507 and 552 of the Bankruptcy Code and Applicable Bankruptcy Rules Authorizing his use of Cash Collateral and Granting Adequate Protection to Secured Lenders and Related Relief* [Dkt. No. 109], with net proceeds thereafter to be used toward satisfying the secured claims of Capstone; and (iii) the party with the senior lien on the Assets, Capstone, is in favor of selling such Assets in this manner, provided that its liens attach to the net proceeds from such sale.

22. To maximize recoveries for the Debtor's estate, the Trustee requests that the Assets sold by the Auctioneer be free and clear of all liens, claims and encumbrances. All of the sale proceeds will be held in accordance with the Auctioneer Agreement, with all liens, claims, interests and encumbrances, if any, to attach to the proceeds in accordance with Section 363(f) of the Bankruptcy Code, pending further Order of the Court.

23. It is therefore submitted that Section 363(f) is satisfied and an immediate sale of the Assets is in the best interests of the Debtor's estate and creditors and will prevent unnecessary, irreparable harm to the creditors and the estate.

24. In terms of the Trustee's decision to pursue a sale by Auction, as opposed to a sale some other means, Bankruptcy Rule 6004(f) provides that, "[a]ll sales not in ordinary course of business may be by private sale or public auction." Fed. R. Bankr. P. 6004(f).

25. It is within the discretion of the Court to determine whether to approve or disapprove of a method for the disposition of property. *See In re Alves*, 52 B.R. 353 (Bankr. D.R.I. 1985); *see also In re Stogsdill*, 102 B.R. 587 (Bankr. W.D. Tex. 1989).

26. The Trustee respectfully submits that the Auction process will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. In addition, the value of the Assets will be tested in the market through a live and online auction process, which will support the fairness and reasonableness of the consideration being received. Therefore, the Trustee requests that the Court authorize and approve the Sale of the Assets.

### III. Protections as a Good Faith Purchaser

27. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under Section 363(b) is later reversed or modified on appeal. *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

28. The selection of the Successful Bidder(s) will be the product of an arm's-length, good-faith negotiation in a competitive purchasing process which will be advertised and open to the general public.

29. Nonetheless, inasmuch as the Trustee does not yet know the identity of each purchaser, and whether one or more purchasers will desire a finding of good faith on its part, the Trustee reserves the right to request the Court make a finding at a later hearing that each Successful Bidder is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

## **NOTICE**

30. Notice of this Motion has been provided to (i) counsel for the Debtor; (ii) counsel for the U.S. Trustee, (iii) counsel to the Committee, (iv) counsel to Capstone, (v) all taxing authorities; (vi) electronically via the Court's CM/ECF system to all parties-in-interest in this Chapter 11 Case who have requested notice under Bankruptcy Rule 2002; and (vii) entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Assets. The Trustee submits that said notice is adequate and proper.

## **NO PRIOR REQUEST**

31. No previous request for the relief sought herein has been made to this Court or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

**WHEREFORE,** for the reasons set forth herein, the Trustee respectfully requests that the Court enter the Sale Order and grant the Trustee such other relief as is just and proper.

| | |
|---|---|
| Dated: October 4, 2019<br>New York, New York | Respectfully submitted,<br><br>REED SMITH LLP<br><br>/s/ *Christopher A. Lynch*<br>Christopher A. Lynch<br>599 Lexington Avenue<br>New York, NY 10022-7650<br>Telephone: (212) 521-5400<br>Facsimile: (212) 521-5450<br>Email:clynch@reedsmith.com<br><br>and<br><br>Claudia Z. Springer (*pro hac vice* pending)<br>Three Logan Square<br>1717 Arch Street, Suite 3100<br>Philadelphia, PA 19103<br>Telephone: (215) 851-8100<br>Facsimile: (215) 851-1420<br>Email: cspringer@reedsmith.com<br>*Counsel for Sandeep Gupta,*<br>*Chapter 11 Trustee* |