REED SMITH LLP
Christopher A. Lynch
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email:clynch@reedsmith.com

and

Claudia Springer (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
Email: cspringer@reedsmith.com

*Counsel for Sandeep Gupta,*
*Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | Chapter 11 |
|---|---|
| SIMKAR LLC, *et al.*, | Case No.: 19-22576 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**MOTION FOR AN ORDER (I) IN FURTHERANCE OF THE COURT'S ORDER APPROVING CHAPTER 11 TRUSTEE'S PROPOSED PROTOCOL TO EVALUATE AND PAY CERTAIN EMPLOYEES' UNPAID POST-PETITION WAGES THAT SATISFY THE REQUIREMENTS OF 11 U.S.C. § 506(c) [DKT. NO. 143] AND (II) AUTHORIZING CHAPTER 11 TRUSTEE TO PAY CERTAIN FORMER EMPLOYEES OF DEBTOR A PORTION OF THEIR POST-PETITION WAGES PURSUANT TO 11 U.S.C. § 506(c) FROM PROCEEDS OF SECURED CREDITOR'S COLLATERAL**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: Simkar LLC (5119) and Neo Lights Holdings, Inc. (7155). The address of the Debtors' corporate headquarters is 700 Ramona Avenue, Philadelphia, Pennsylvania."

**TO:    THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

Sandeep Gupta, not individually but in his capacity as chapter 11 trustee (the "Chapter 11 Trustee") of Simkar LLC ("Simkar" or the "Debtor") in the above-captioned chapter 11 case, by and through his counsel, Reed Smith LLP, files this motion (the "Motion") for an Order, pursuant to sections 105(a) and 506(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., (the "Bankruptcy Code") and Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) in furtherance of the Court's *Order Approving Chapter 11 Trustee's Proposed Protocol to Evaluate and Pay Certain Employees' Unpaid Post-Petition Wages that Satisfy the Requirements of 11 U.S.C. § 506(c)* [Dkt. No. 143] (the "Wage Claim Protocol Order"), and (ii) authorizing the Chapter 11 Trustee to pay certain former employees of Debtor a portion of their post-petition wages pursuant to 11 U.S.C. § 506(c) from proceeds of secured creditors' collateral, and in support thereof states as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

2.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicates for this Motion are Bankruptcy Code §§ 105(a) and 506(c) and Bankruptcy Rule 9013.

## BACKGROUND

4.  On March 6, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Case").

5. On March 8, 2019, the Debtor's direct parent company, Neo Lights Holdings, Inc. ("Neo") also filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court (the "Neo Chapter 11 Case").

6. Pursuant to an order entered on August 26, 2019, the Chapter 11 Case and the Neo Chapter 11 Case are jointly administered for administrative purposes only.

7. On March 22, 2019, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Case pursuant to Bankruptcy Code Section 1102 [Dkt. No. 22].

8. On April 17, 2019, the Committee filed a motion seeking the appointment of a chapter 11 trustee [Dkt. No. 43], alleging gross mismanagement of the Debtor by its then management and the suspected misappropriation of funds (the "Trustee Motion"). The Court granted the Trustee Motion on April 26, 2019 [Dkt. No. 62].

9. Thereafter, on May 1, 2019, the U.S. Trustee sought approval of Sandeep Gupta as the Chapter 11 Trustee [Dkt. No. 66] of the Debtor's estate. On that same day, the Court entered an order approving the appointment of Mr. Gupta as the Chapter 11 Trustee [Dkt. No. 67].

10. Upon his arrival at Simkar, the Chapter 11 Trustee discovered that certain employees of Simkar had worked for several weeks following the Petition Date without being compensated. Most of these employees have not yet been compensated for work they performed for the Debtor after the Petition Date.

11. Capstone Credit LLC and Capstone Recovery Group, LLC (together, "Capstone") hold first priority liens and security interests in virtually all of Simkar's assets and have perfected their liens by filing UCC-1 financing statements with the appropriate governmental authorities.

Capstone is owed over $6 million by Simkar and is undersecured because the value of Simkar's assets is less than the amount of Capstone's claims.

12. This Motion is related to the Motion previously filed by the Chapter 11 Trustee pursuant to sections 105(a), and 503(b)(1)(A)(i) of the Bankruptcy Code and Rules 2016 and 3002 of the Bankruptcy Rules(the "Wage Claim Protocol Motion)[2], for entry of the Wage Claim Protocol Order. [Dkt. No. 137] The Wage Claim Protocol Order, entered by the Court on September 18, 2019, also approved a form of Notice of Deadline to File Response for Consideration for Payment under Bankruptcy Code Section 506(c) (the "Response Deadline Notice") and form of Response Form for Consideration for Payment under Bankruptcy Code Section 506(c) (the "Response Form") to be completed and returned by each former employee that wished to have their unpaid wages considered for payment under Section 506(c). [Dkt. No. 143]

13. In accordance with the Wage Claim Protocol Order, the Chapter 11 Trustee sent the Response Deadline Notice to all employees who provided services to the Debtor after the Petition Date without remuneration. The Response Deadline Notice was accompanied by the Response Form to be completed and returned to the Chapter 11 Trustee's counsel on or prior to October 24, 2019 (the "Deadline"). The Response Deadline Notice is clear on its face as to the requirements regarding the completion of the Response Form. The chart attached hereto as **Exhibit "A"** shows (a) all former employees (identified by job title rather than name) that responded to the Response Deadline Notice by timely submitting a Response Form (each a "Claimant" and, collectively, the "Claimants"), (b) the amounts claimed by the Claimant to be owed to such Claimant (adjusted to exclude unpaid benefits), and (c) the amounts reflected in the

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Wage Claim Protocol Motion.

- 4 -

Debtor's books and records as due to such Claimant.[3] Response Forms were submitted timely by 41 hourly workers and 33 non-insider office workers.

14. Unfortunately, very few of the Claimants were specific regarding the types of tasks they performed for the Debtor during the post-petition period. Many disregarded the instructions set forth clearly on the Response Form by requesting payment of regular salary as well as items such as unpaid benefits (including, without limitation, sick time and vacation pay, travel and entertainment reimbursement, 401(K) contributions and the like) and other amounts. It is virtually impossible to discern from almost all of the Response Forms received, the amount, if any, that may fall within the scope of Section 506(c) of the Bankruptcy Code.[4]

15. The Chapter 11 Trustee believes that at least some of the work performed by the Debtor's former employees after the Petition Date, for which they were not paid, may satisfy the criteria for surcharge under Section 506(c), because the work performed served to increase the value of, preserve or dispose of, some of Debtor's inventory and equipment, which ultimately benefitted Capstone. Because Capstone holds a first priority perfected lien in all of the Debtor's assets, any actions of former employees that preserved or enhanced the value of such assets is compensable under Section 506(c). A certain number of the former employees were involved in manufacturing inventory from component parts, thus turning parts into finished goods. Others were involved in selling inventory in order to convert inventory to cash. As the holder of a first priority lien and security interest in Simkar's inventory and the proceeds therefrom, Capstone

---

[3] The amount requested by Claimants for unpaid wages in their Response Forms (exclusive of other unpaid benefits) for the period at issue was substantially the same as the amount reflected in the Debtor's books and records for that period for those Claimants.

[4] Section 506(c) of the Bankruptcy Code provides as follows: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to such property." 11 U.S.C. § 506(c).

benefitted from some of the work performed by employees who fabricated and/or sold inventory during the post-petition period. In addition, certain of Simkar's employees may have at various times operated and maintained its equipment during the post-petition period which kept it in working order, and thereby resulted in a retention or improvement of its value.

16.     Based solely upon the Response Forms submitted, it is virtually impossible to determine with precision the amount of time (and therefore the value) that the Claimants spent on activities that benefitted Capstone by either enhancing or preserving the value of Capstone's collateral. Even if the Chapter 11 Trustee had the wherewithal to interview each of the Claimants (which he does not given the size of this estate), this exercise would be unlikely to provide much more certainty as to value of those services rendered.

17.     Because this estate has insufficient assets to cover administrative claims in full and because Capstone is well undersecured, the Chapter 11 Trustee believes it would be wasteful of estate assets to delve more deeply into the post-petition activities of each former employee to attempt to determine more precisely the amount of time spent by each such former employee that meets the requirements of Section 506(c). Thus, the Chapter 11 Trustee seeks to modify the protocol approved in the Wage Claim Protocol Order in order to propose a uniform formula which will be offered to each Claimant who timely submitted a Response Form for the payment of a portion of the unpaid time spent by such former employees (largely dependent upon the general scope of their duties) in connection with the conduct of their jobs. As detailed below, any Claimants who choose not to accept the uniform proposal offered by the Chapter 11 Trustee will have an opportunity to object to such treatment and have the merits of their claims determined by this Court.

## RELIEF REQUESTED AND BASIS FOR RELIEF

18. As stated earlier, the Chapter 11 Trustee lacks first-hand knowledge as to the value of the post-petition efforts of the Debtor's former employees that may warrant payment from the proceeds of Capstone's collateral under Section 506(c). However, based upon the Debtor's books and records and the Chapter 11 Trustee's general understanding of the types of tasks performed by the Debtor's hourly workers, which largely consisted of manufacturing inventory and maintaining equipment, the Chapter 11 Trustee believes that there is a far more compelling argument that the work performed by them was beneficial to Capstone's interest in the collateral, particularly as compared to the work performed by office staff. Therefore, with respect to those Claimants who were hourly workers and accept the treatment proposed herein, the Chapter 11 Trustee proposes that such hourly employees be paid seventy five percent (75%) of their post-petition unpaid wages as reflected in the Debtor's books and records, exclusive of any benefits (including any vacation or sick leave pay). This sum, according to the Debtor's books and records amounts to approximately $54,000 in the aggregate for these Claimants.

19. As to the Debtor's office workers and sales staff, the Chapter 11 Trustee believes that very little, if any, of their efforts enhanced Capstone's collateral position during the time period at issue. Very few sales occurred which means that very few receivables were generated during this time period and very few accounts were collected. Thus, based upon the Debtor's books and records, with respect to those non-insider office worker Claimants accepting the treatment proposed herein, the Chapter 11 Trustee proposes to pay such former employees an aggregate of 15% of their post-petition wages, as reflected in the Debtor's books and records, exclusive of benefits. This would amount to a total payment of approximately $50,000.

20. By this Motion, the Chapter 11 Trustee is seeking entry of an Order which authorizes the Chapter 11 Trustee, pursuant to Section 506(c), and in exchange for such Claimant releasing the Debtor's estate from any and all other administrative expense claims by signing a release in the form attached to this Motion as **Exhibit "B"**, to (i) pay to those hourly worker Claimants accepting the treatment proposed herein 75% of their unpaid, post-petition wages as reflected in the Debtor's books and records and (ii) pay to those non-insider office worker Claimants accepting the treatment proposed herein 15% of their unpaid, post-petition wages as reflected in the Debtor's books and records.

21. The Chapter 11 Trustee proposes to serve each Claimant with a notice in the form of **Exhibit "B"** attached hereto (the "Notice and Release"), which describes the amount of such payment that a recipient of the Notice and Release shall receive if such Claimant signs and returns to the Chapter 11 Trustee the release contained in the Notice and Release.

### A.    The Proposed Protocol for Determining Amount of Claims and Entitlement to Treatment under Section 506(c) of the Bankruptcy Code.

22. This is a liquidating Chapter 11 Case. This estate has very few assets (at this time, the net amount received by the Chapter 11 Trustee from a liquidation of substantially all assets through a public auction held in October, 2019 is approximately $1 million after payment of the auctioneer's fees and the costs of cleaning out the leased premises) and all of such cash constitutes Capstone's cash collateral.

23. It is anticipated that the sale proceeds will be insufficient to pay the Debtor's administrative expense claims in full. However, the Chapter 11 Trustee believes that the amount he is proposing be paid to the Claimants pursuant to Section 506(c), is reasonable under the circumstances and reflects a thoughtful approximation of the value conferred upon the secured lender's collateral following the Petition Date by virtue of the work performed by such Claimants.

24. While the unpaid post-petition wage claims of Claimants aggregate over $400,000 (not including unpaid vacation pay and benefits), as set forth in their Response Forms, most of the amount does not qualify for treatment under Section 506(c) given the nature of the unremunerated tasks believed to have been performed by many of the former employees.

25. The Chapter 11 Trustee complied with the Wage Claim Protocol Order and as a result received 74 Response Forms on or prior to the Deadline for submission of the Response Forms.

26. Many of the Response Forms submitted did not adhere to the instructions set forth on the Response Deadline Notice and on the Response Form itself. However, based upon such Response Forms together with the Response Deadline Notices, and following discussions with counsel for Capstone and the Committee, the Chapter 11 Trustee determined that approximately 75% of the hourly worker Claimants' time is compensable under Section 506(c) and approximately 15% of the office worker Claimants' time is compensable under Section 506(c).

27. Attached to this Motion as **Exhibit "A"** is the Chapter 11 Trustee's proposed list of those Unpaid Post-Petition Wage Claims (or portions thereof) that he believes meet the statutory requirements set forth in Section 506(c) (the "Qualified Claims"). The Chapter 11 Trustee has shared the list with Capstone, its counsel, and counsel to the Committee. The Chapter 11 Trustee believes that Capstone does not object to the relief sought herein.

28. By this Motion and the Notice and Release that the Chapter 11 Trustee proposes to send to each Claimant, each Claimant will have the opportunity to examine the Chapter 11 Trustee's proposal regarding his or her payment. If such Claimant agrees to the treatment proposed, including the release (each such claim, a "Consenting Claim"), the Claimant shall sign and return the Notice and Release to the Chapter 11 Trustee's counsel by the deadline set forth

- 9 -

therein (which will be 30 days from the mailing of the Notice and Release). If such Claimant is unwilling to accept the proposal (each such claim, a "Non-Consenting Claim"), he or she shall so indicate on the Notice and Release form, and the Chapter 11 Trustee will request a hearing be scheduled so that disputed 506(c) claims may be determined by the Court. In the event that a Claimant fails to timely return a signed Notice and Release (each such claim a "Non-Responding Claim"), such Claimant's Unpaid Postpetition Wage Claim shall not be paid in accordance with Section 506(c), but shall remain a claim filed under Section 503 of the Bankruptcy Code, subject to all defenses available to the Debtor and the Chapter 11 Trustee.

29. Upon completion of the process set forth herein, the Chapter 11 Trustee shall (a) file with the Court a statement identifying (i) all Consenting Claims that are being partially paid in accordance with the protocol described herein, and (ii) all Non-Responding Claims, and (b) request a hearing be scheduled for further proceedings regarding all Non-Consenting Claims.

    **B.    Legal Justification for Requested Relief under Section 506(c) of the Bankruptcy Code.**

30. Section 506(c) provides that a trustee "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Recovery of such costs and expenses is dependent upon the trustee's ability to establish that such costs and expenses were: (i) reasonable, (ii) necessary, and (iii) provided a direct benefit to the secured creditor. *See General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir. 1984) ("Flagstaff I"). In *Flagstaff I*, the Second Circuit Court of Appeals denied recovery to counsel for both the debtor-in-possession and creditors' committee who sought to have their fees satisfied out of the proceeds of the secured creditor's collateral. Recovery under Section 506(c) is appropriate, the court held, where the

- 10 -

expenses for the preservation or disposition of the property are incurred primarily for the secured creditor's benefit. *Flagstaff I*, 739 F.2d at 76.

31. Alternatively, a secured creditor may consent to the payment of administrative claims; however "such consent is not to be lightly inferred." *Id.* at 77. And further, it should not be inferred merely from a secured creditor's cooperation with the debtor. *Id.*; *see also General Elec. Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10, 12 (2d Cir. 1985) ("Flagstaff II") (denying Section 506(c) claim because payroll taxes incurred during debtor's attempted reorganization were not for the primary benefit of secured creditor); *In re Lorick*, No. 1-16-45645-NHL, 2018 WL 3854139, at *5 (Bankr. E.D.N.Y. Aug. 9, 2018).

32. Consistent with "[t]he underlying purpose of 11 U.S.C. § 506(c)" – "that the secured creditor should pay for the benefit it received" – to have a valid claim under Section 506(c), and absent implied or express consent by the secured creditor, a trustee must demonstrate that the expenses were necessary, the amounts expended were reasonable, and the expenses directly benefitted the secured creditor. *In re McLean Indus., Inc.*, 84 B.R. 340, 350 (Bankr. S.D.N.Y. 1988); *Marc Stuart Goldberg, P.C. v. City of New York (In re Navis Realty, Inc.)*, 193 B.R. 998, 1006 (Bankr. E.D.N.Y.1996); *In re Sports Info. Data Base, Inc.*, 64 B.R. 824, 827 (Bankr. S.D.N.Y. 1986) (payment of rent did not give rise to a Section 506(c) claim where primary benefit was to estate, not to secured creditor). The trustee bears the burden of showing that Section 506(c) applies. *Flagstaff I,* 739 F.2d at 77. Generally, expenses are "necessary" under Section 506(c) only if there is equity in the collateral for the benefit of the estate, and unnecessary if there is no equity. A trustee "does not meet this burden of proof by suggesting possible or hypothetical benefits." *Flagstaff II* at 12; *see also In re West Post Road Properties Corp.*, 44 B.R. 244, 247–

48 (Bankr. S.D.N.Y. 1984); *In re Roamer Linen Supply, Inc.*, 30 B.R. 932, 936 (Bankr. S.D.N.Y. 1983); *In re Sports Info. Data Base, Inc.*, 64 B.R. 824, 826–27 (Bankr. S.D.N.Y. 1986).

33. Courts have held that the payroll of employees directly and solely involved with the disposition of a secured creditors' collateral are expenses which are directly related to disposing of or preserving the creditors' collateral, and thus are recoverable under Section 506(c). *In re Sharon Steel Corp.*, 206 B.R. 776, 783 (Bankr. W.D. Pa. 1997); *In re Phoenix Pipe and Tube, L.P.*, 1994 WL 673097 (E.D.Pa. 1994) (permitting surcharge of collateral under 11 U.S.C. § 506(c) for payment of post-petition salary and fringe benefits to the debtor's chief executive officer); *In re Mech. Maint., Inc.*, 128 B.R. 382, 390 (E.D. Pa. 1991) (permitting surcharge for contributions to employees' fringe benefit funds); *see also Meinhard Greeff & Co. v. Edens*, 189 F.2d 792, 796 (4th Cir. 1951) (value was added to yarn during manufacturing process, and trustees were entitled to charge against the proceeds the expenses allocable to manufacturing process); *In re Stacy's, Inc.,* 508 B.R. 370, 379 (Bankr. D.S.C. 2014) (indicating that expenses that may qualify for surcharge under Section 506(c) include "appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs.").

34. In this case, while the Chapter 11 Trustee knows that Debtor's employees spent time working at the Debtor's place of business after the Petition Date for which they were not paid, as to many of the office employees, the Chapter 11 Trustee is without knowledge regarding the precise nature of their activities and consequently is unable to determine at this time whether the types of work performed by such employees satisfy the requirements of Section 506(c) of the Bankruptcy Code. As for the hourly employees, the Chapter 11 Trustee believes that their jobs entailed completing inventory and operating machinery, both of which tasks arguably benefitted

Capstone, the holder of a first priority lien on such assets. The protocol established by the Chapter 11 Trustee and approved by the Court in the Wage Claim Protocol Order enabled the former employees to establish the nature of their duties and tasks performed for the Debtor after the Petition Date. Unfortunately, many Claimants did not follow the instructions set forth in the form of Notice and/or their responses do not justify payment of some or all of their claims under Section 506(c).

35.    This process is not an exact science. However, the Chapter 11 Trustee believes that the proposal in this Motion regarding the payment of former employee post-petition claims is fair..

36.    In the event that a Claimant fails to return a signed release in the form attached hereto as **Exhibit "B"** within the time set forth in the Notice and Release, such Claimant's Unpaid Postpetition Wage Claim shall not be paid in accordance with Section 506(c), but shall remain a claim filed under Section 503 of the Bankruptcy Code, subject to all defenses available to the Debtor and the Chapter 11 Trustee.

        C.    **The Form and Manner of Notice of the Protocol is Proper**

37.    The Chapter 11 Trustee proposes that each Claimant receive the form of Notice and Release attached hereto as **Exhibit "B"**. The Chapter 11 Trustee believes that the Notice and Release is clear in its guidance regarding the Chapter 11 Trustee's view as to the Qualified Claim amount and the proposed payment thereof. The form of Notice and Release also specifies that the release must be signed, dated and returned to the Chapter 11 Trustee by a date certain in order for the claimant to receive his or her distribution. An envelope addressed to the Chapter 11 Trustee's counsel will be included in the package containing the Notice and Release so that recipients simply need to sign the release form, affix proper postage, and return it in the envelope provided.

38. All Claimants who receive the Notice and Release will be given thirty (30) days from the Mailing Date to return the signed and dated form of release to the Chapter 11 Trustee's counsel.

39. The Chapter 11 Trustee submits that the foregoing notice fully complies with the requirements set forth in Bankruptcy Rule 3002 and 6004. Based upon the foregoing, the Chapter 11 Trustee respectfully requests that this Court approve the form and manner of the Notice and Release.

## NOTICE

40. Notice of this Motion will be provided to (i) counsel for the Debtor; (ii) counsel for the U.S. Trustee, (iii) counsel to the Committee, (iv) counsel to Capstone; and (v) electronically via the Court's CM/ECF system to all parties-in-interest in this Chapter 11 Case who have requested ECF Notice. The Chapter 11 Trustee submits that said notice is adequate and proper.

## NO PRIOR REQUEST

41. With the exception of the related Wage Claim Protocol Motion, no previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION AND REQUESTED RELIEF

**WHEREFORE,** for the reasons set forth herein, the Chapter 11 Trustee respectfully requests that the Court (i) enter an order substantially in the form of the Order attached hereto as **Exhibit "C"** that, authorizing the Chapter 11 Trustee to pay certain former employees of the Debtor, that accept the treatment proposed herein, a portion of their post-petition wages pursuant to 11 U.S.C. § 506(c) from proceeds of secured creditors' collateral, and (ii) grant the Chapter 11 Trustee such other relief as is just and proper.

- 14 -

| | |
|---|---|
| Dated: January 10, 2020<br>New York, New York | Respectfully submitted,<br><br>REED SMITH LLP<br><br>/s/ *Christopher A. Lynch*<br>Christopher A. Lynch<br>599 Lexington Avenue<br>New York, NY  10022-7650<br>Telephone:  (212) 521-5400<br>Facsimile:  (212) 521-5450<br>Email:clynch@reedsmith.com<br><br>and<br><br>Claudia Z. Springer (*admitted pro hac vice*)<br>Three Logan Square<br>1717 Arch Street, Suite 3100<br>Philadelphia, PA 19103<br>Telephone: (215) 851-8100<br>Facsimile: (215) 851-1420<br>Email: cspringer@reedsmith.com<br><br>*Counsel for Sandeep Gupta,*<br>*Chapter 11 Trustee* |